UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JODI CHRISTINE VETTER,

                Plaintiff,                Case No. 2:14-cv-13214
                                        District Judge Gerald E. Rosen
v.                                  Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.

_____/

**RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT (DE 13) AND TO DENY PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT (DE 11)**

**I.**    **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT** Defendant's motion for summary

judgment, **DENY** Plaintiff's motion for summary judgment, and **AFFIRM** the

Commissioner's decision.

**II.**    **REPORT**

      Plaintiff, Jodi Christine Vetter, brings this action under 42 U.S.C. §§ 405(g)

and 1383(c)(3) for review of a final decision of the Commissioner of Social

Security  ("Commissioner") denying her applications for social security disability

insurance benefits and supplemental security income.  This matter is before the

United States Magistrate Judge for a Report and Recommendation on Plaintiff's

motion for summary judgment (DE 11), the Commissioner's memorandum in opposition and cross motion for summary judgment (DE 13), and the administrative record (DE 9).

### A.    Background

Plaintiff initially filed her applications for benefits on May 4, 2010, alleging that she had been disabled since January 1, 2009. (R. at 99.) Her applications were denied and Plaintiff sought a *de novo* hearing before an Administrative Law Judge ("ALJ"). ALJ Kathleen H. Eiler held a hearing on July 19, 2011 and issued a decision on August 19, 2011 ("the 2011 denial"), concluding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 73-107.) ALJ Eiler determined that Plaintiff had severe impairments of diabetes mellitus with neuropathy and migraine headaches. (R. at 101.) She assessed an RFC of light work with postural limitations. (R. at 102.) The Appeals Council denied review of the 2011 denial and Plaintiff did not appeal. (R. at 112-17.)

In the instant action, Plaintiff protectively filed her applications for benefits on March 4, 2012, alleging that she has been disabled since August 20, 2011, at age 28.[1] (R. at 202.) Plaintiff's applications were denied. Plaintiff sought a *de*

---

[1] During the hearing, there was a brief period of confusion in which the ALJ indicated that the alleged onset date was January 1, 2009. (R. at 30.) Plaintiff's applications, however, list an alleged onset date of August 20, 2011 – the day after her prior administrative denial – and Plaintiff affirmed that as the onset date during her testimony. (R. at 34 and 202.)

*novo* hearing before an Administrative Law Judge ("ALJ"). ALJ Kevin J.

Detherage held a hearing on February 20, 2013 and subsequently determined that

Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 13-

71.) On June 16, 2014, the Appeals Council denied Plaintiff's request for review.

(R. at 1-4.) ALJ Detherage's decision became the Commissioner's final decision.

Plaintiff then timely commenced the instant action.

### B.    Plaintiff's Medical History

Plaintiff's assertions of error are related to her impairments of depression

and migraine headaches. Plaintiff presented to neurologist Khalil Nasrallah, M.D.,

on November 17, 2011, complaining of frequent headaches. (R. at 311.) Plaintiff

indicated that the headaches were severe, throbbing, and could last for two days.

She informed Dr. Nasrallah that she took Excedrin, plus her mother's Vicodin and

Ultram. Dr. Nasrallah's examination showed no focal neurological deficits. (R. at

311-12.) Dr. Nasrallah prescribed Plaintiff Depakote ER and Medrol Dosepak,

and instructed her not to take other people's medications. (R. at 312.) On

December 29, 2011, Plaintiff indicated that her headaches had improved by 30%

since beginning Depakote ER, and Dr. Nasrallah increased her dose. (R. at 309.)

On February 27, 2012, however, Plaintiff indicated that she had been unable to fill

her prescriptions for two weeks due to an insurance issue, and, as a result, her

headaches were severe again.  (R. at 307.)  Dr. Nasrallah instructed her to pick up the Inderal LA while she resolved her insurance issues.  (R. at 308.)

Plaintiff apparently resolved those issues by April 30, 2012, when she reported to Dr. Nasrallah that she had been able to fill her Depakote ER and Inderal LA prescriptions, but nevertheless had around twenty headaches over the past month.  (R. at 355.)  A neurological examination was normal.  Dr. Nasrallah recommended Botox injections for her headaches.  (R. at 356.)  On June 8, 2012, Plaintiff underwent an MRI which showed normal results.  (R. at 386.)  Plaintiff underwent a Botox injection on June 12, 2012, but reported to Dr. Nasrallah one month later that her headaches did not improve.  (R. at 398.)  Dr. Nasrallah recommended physical therapy and water exercises.

Plaintiff saw nurse practitioner Heather Prior on September 20, 2012.  (R. at 414-422.)  Ms. Prior noted that Plaintiff had symptoms consistent with depression. (R. at 414.)  She prescribed Plaintiff Cymbalta after the results of Plaintiff's depression assessment indicated a provisional diagnosis of severe major depression.  (R. at 420.)  On November 1, 2012, Plaintiff reported that she the Cymbalta had helped greatly and that she was "very content."  (R. at 408.)

State Agency reviewers, Mark Garner, Ph.D. and Eric VanderHaagen, D.O., completed a review of Plaintiff's records on May 18, 2012 and on June 26, 2012, respectively.  (R. at 123 and 126.)  Dr. Garner opined that Plaintiff had no ongoing

4

treatment for depression and adopted ALJ Eiler's decision as it pertained to her psychological impairments. (R. at 123.) Dr. VanderHaagen did not adopt ALJ Eiler's physical RFC because of new and material evidence of increasing headaches. (R. at 126.) He noted, however, that although Plaintiff complained of increasing headaches, the medical evidence did not support increased visits to health care providers for treatment of these headaches. Both State Agency reviewers assessed Plaintiff as not disabled.

### C.   Hearing Testimony

#### 1.   Plaintiff's Testimony

At the February 20, 2013 hearing, the 29 year-old Plaintiff testified that she lived in an apartment with her two sons, aged nine and seven. (R. at 35-36.) She averred that she completed schooling through the eleventh grade. (R. at 36.) Plaintiff testified that she was the primary caregiver to her two sons. (R. at 49.) She indicated that she cooked their meals, did laundry, did household chores, and drove them to school, even when she had headaches. (R. at 49-50, 52, and 58.) She averred that she took her sons sledding and drove them to soccer and basketball games, unless she washaving a headache. (R. at 54-55.) Plaintiff testified that she watched about six hours of television per day and loved to read. (R. at 51.) She testified that she had trouble sleeping and generally slept five to six hours per night. (R. at 51.)

Plaintiff testified that she recently worked as a bartender at the Washington Street Pub for just over three months, a job that required her to be on her feet frequently. (R. at 36 and 40.) She noted that she was fired from this job because she called in too often (four to five times per month). (R. at 37.) Plaintiff averred that while she was working, her headaches would cause her to get sick and her legs swelled up. (R. at 39.) Plaintiff averred that she might be able to perform a job where she was not standing as much as she did during her past employment, unless her head began to hurt. (R. at 55.)

Plaintiff testified that she previously worked as a home health aide at Riverstone, a home for adults with brain injuries. (R. at 40.) According to Plaintiff, she received one month of on-the-job training and had to be licensed in CPR. (R. at 66.) As a home health aide, Plaintiff cared for the residents by doing their laundry, cooking their meals, and bathing them. (R. at 40-41.) She worked there for six months, but was fired because she missed work seven to eight times per month, left early, and had doctor's appointments. (R. at 41.)

Plaintiff testified that prior to this position she worked as a hotel clerk for four years. (R. at 51.) Her job duties included taking reservations, greeting people, entering their information in the computer, billing, and doing light cleaning. (R. at 63-64.)

Plaintiff testified to severe headaches and diabetes. She indicated that she began having severe headaches after her son was born in 2004. (R. at 42.) She saw a doctor the same year and was prescribed Imitrex, which did not help because it interfered with her diabetes. (R. at 43.) Plaintiff averred that she has about six headaches per month that last for a few hours each. (R. at 45.) She indicated that she takes Excedrin and puts wash cloths on her forehead to alleviate the pain. (R. at 46.) Her neurologist also administered Botox as a headache treatment and that her neurologist would like to test for spinal leakage once her insurance approves the procedure. (R. at 46.)

Plaintiff testified that her diabetes was "out of control" at the time of the hearing. (R. at 43.) She averred that she also suffered from neuropathy in her legs and rated the pain as a six out of ten. (R. at 44.)

Plaintiff testified that she used to get mental health counseling for her depression, but that she no longer went because she did not want to get out of bed. (R. at 52.) She averred that she took Cymbalta for her depression, but did not indicate its effectiveness. (Id.) Plaintiff testified that she had *no trouble with her memory, no difficulty maintaining attention or concentration, no problems understanding information or instructions, making decisions, or getting along with other people*. (R. at 53-54.) According to Plaintiff, the effects of her depression mainly involved her feeling down. (R. at 54.)

Plaintiff testified that she could lift a jug of milk, but that it made her dizzy. (R. at 46.)   She testified that she could walk about one hundred yards, but that her neuropathy caused her legs to hurt.  (R. at 47.)  She also averred that she could stand for twenty minutes, but that her legs started to cramp up if she stood or sat for too long.  (R. at 47.)  Plaintiff testified that she had trouble grasping and fingering because of numbness in her fingers, but noted that she could write her name, fill out a short form, use a computer keyboard, and use a cell phone.  (R. at 48.)

## 2.    Vocational Expert Testimony

David Holtwater testified as the Vocational Expert ("VE") at the administrative hearing.  (R. at 60-71.)  The VE testified that Plaintiff's past relevant work as a hotel clerk, DOT 238.367-038, was light and semiskilled with a specific vocational preparation ("SVP")[2] of 4, her work as a home health aide, DOT 354.377-014 was medium (but heavy as performed by Plaintiff), and semiskilled with an SVP of three.  (R. at 64.)  The ALJ asked the VE a series of hypotheticals.  In the first hypothetical, he asked the VE if a hypothetical individual with Plaintiff's work history with a residual functional capacity to do

---

[2] "The DOT lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT."  SSR 00-4P.

unskilled light work, would be able to perform any of Plaintiff's past relevant work, to which the VE answered in the negative.  (R. at 66-67.)  The VE testified that the hypothetical individual could perform other work, including assembler, with 11,000 jobs in Michigan and 200,000 nationally; inspector, with 6,000 jobs in Michigan and 130,000 nationally; a hand packager, with 9,000 jobs in Michigan and 300,000 nationally.  (R. at 67.)

The ALJ then asked the VE if the first hypothetical individual could perform other work if she was limited to occasionally stooping, kneeling, crouching, or crawling, could never climb ramps and stairs, and should avoid exposure to hazardous conditions.  (R. at 68.)  The VE testified that such a limitation would result in a twelve percent reduction in the number of jobs noted above.

Finally, the ALJ asked the VE to assume that individual in the second hypothetical was also likely to be absent from work three days per month.  (R. at 69.)  The VE testified that such a limitation would preclude competitive employment.  (R. at 70.)  The VE further testified that being off task for more than 30 minutes per day would be work preclusive.  (R. at 70.)

## D.  THE ADMINISTRATIVE DECISION

On April 25, 2013, the ALJ issued his decision.  (R. at 13-22.)  As a preliminary matter, the ALJ noted that Plaintiff had previously filed for disability insurance and supplemental security income on May 4, 2010.  (R. at 13.)  The

9

claims were denied by ALJ Kathleen H. Eiler on August 19, 2011.  The ALJ pointed out that ALJ Eiler's decision was final and binding through August 19, 2011, but that Plaintiff's alleged onset date here was August 20, 2011, making the principles of *res judicata* inapplicable to the current applications.  (Id.)

At step one of the sequential evaluation process, [2] the ALJ found that Plaintiff had not engaged in substantially gainful activity since August 20, 2011. (R. at 15.)

At step two, the ALJ found that Plaintiff had the following severe impairments: diabetes mellitus with neuropathy, migraine headaches, and depression.  (Id.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 16-17.)

At step four of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[3] and determined that Plaintiff could perform light work with the following exceptions:

---

[3] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §404.1545(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

she can occasionally stoop, kneel, crouch, crawl, and climb ramps or
stairs, but she can never climb ladders, ropes, or scaffolds; she must
avoid exposure to hazardous conditions; and she is limited to
unskilled work.

(R. at 17.)  In making this finding, the ALJ noted that he found evidence of record
to show a change in Plaintiff's condition since ALJ Eiler's prior decision and that
the substantial evidence of record supports the current RFC.  (Id.)  Specifically, the
ALJ adopted the physical RFC opined by ALJ Eiler, with an additional limitation
that Plaintiff be restricted to only unskilled work, due to her depression.

Relying on the VE's testimony, the ALJ determined that Plaintiff was unable
to perform her past relevant work, but concluded that she was capable of
performing other jobs that exist in significant numbers in the state and national
economy, including assembler, with 9,680 jobs in Michigan; inspector, with 5,280
jobs in Michigan; and hand packager, with 7,920 jobs in Michigan.  (R. at 21.)   He
therefore concluded that Plaintiff was not disabled under the Social Security Act.
(Id.)

## E.   STANDARD OF REVIEW

The District Court has jurisdiction to review the Commissioner's final
administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case
under the Social Security Act, the Court "must affirm the Commissioner's decision
if it 'is supported by substantial evidence and was made pursuant to proper legal
standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009)

11

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## F.  ANALYSIS

In her motion for summary judgment, Plaintiff asserts that the ALJ erred in two ways.  First, Plaintiff argues that the ALJ's hypothetical to the VE was not supported by substantial evidence.  Second, she contends that the ALJ erred in concluding that there was new and material evidence of Plaintiff's migraines since the previous denial by ALJ Eiler, but that the ALJ did not incorporate such a limitation into Plaintiff's RFC.  The Commissioner opposes Plaintiff's motion, asserting that she is entitled to a grant of summary judgment because substantial evidence supports the ALJ's conclusions.  The Undersigned agrees with the Commissioner's assertion and will address each argument in turn.

### 1.    Substantial Evidence Supports the ALJ's Hypothetical Questions to the VE Regarding Plaintiff's Depression

Plaintiff asserts that the ALJ erred in applying *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997) and Social Security Acquiescence Ruling ("AR") 98-4(6).  Specifically, she contends that the 2011 denial stated that Plaintiff's "alleged depression [was] not a medically determinable impairment."

13

(DE 11 at 11, R. at 101-102.)   Because the ALJ in the current case determined that Plaintiff's depression was a severe impairment, Plaintiff maintains that the ALJ in some way erred.

This argument appears to be misplaced.  In *Drummond*, the Sixth Circuit held that "[a]bsent evidence *of an improvement* in a claimant's condition, a subsequent ALJ is bound by the findings of the previous ALJ."  *Drummond*, 126 F.3d at 842 (emphasis added).  Following *Drummond*, the Commissioner issued AR 98-4(6), which required those adjudicating subsequent disability claims arising under the same title as a prior claim to adopt the finding from the final decision of the prior claim, absent a finding of new and material evidence, or a change in the law.  AR 98-4(6), 63 Fed. Reg. 29771-01 (June 1, 1998).  Here, the ALJ concluded that there was new and material evidence regarding Plaintiff's depression.  He adopted the RFC from the 2011 denial, with the addition that Plaintiff was limited to unskilled work, thereby imposing *a more restrictive* RFC than that opined by ALJ Eiler.  Here, rather than rest upon the principles of *res judicata* and succumb to the temptation to lazily duplicate the prior RFC finding, the ALJ carefully accredited the new evidence and adjusted the RFC to reflect greater limitations.  *Drummond* and AR 98-4(6) do not appear to be implicated, and Plaintiff does not explain how the ALJ erred in his application of the same, much less how this has prejudiced her position.

14

Instead, despite her references to *Drummond* and AR 98-4(6), Plaintiff's primary argument seems to be that the ALJ erred by not including Plaintiff's moderate difficulties with concentration, persistence, and pace ("CPP") in his hypotheticals to the VE. When an ALJ concludes that a claimant does not have the RFC to perform his or her past relevant work, the burden shifts to the Commissioner to show that Plaintiff "possesses the capacity to perform other substantial gainful activity that exists in the national economy." *Varley v. Sec'y of Health & Hum. Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This requires the Commissioner to "make a finding supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (internal citations omitted).

Such substantial evidence "may be produced through reliance on the testimony of a vocational expert (VE) in response to a 'hypothetical' question, but only if the question accurately portrays [the claimant's] individual physical and mental impairments." *Id.* "A response to a flawed hypothetical question is not substantial evidence and cannot support a finding that work exists which the Plaintiff can perform." *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 927 (E.D. Mich. 2005).

In the instant action, the ALJ concluded at step three that, as a result of her depression, Plaintiff had moderate difficulties with regard to CPP. (R. at 16.) This

15

finding appears to be based on Plaintiff's responses in a Function Report, indicating that her depression affected her ability to remember, complete tasks, and concentrate.  (R. at 249.)  Plaintiff points out that ALJ Eiler and both of the State Agency reviewing physicians declined to propose similar restrictions.  (R. at 101-102, 123, and 127.)

Plaintiff relies on *Aldrich v. Commissioner of Social Security*, No. 14208, 2013 WL 5372802 (E.D. Mich. Sept. 25, 2013), an unpublished opinion, for the proposition that where an ALJ (as opposed to a medical expert) independently finds moderate limitations in CPP, he or she is required to incorporate those limitations into the hypothetical question.  (DE 11 at 13.)  The *Aldrich* holding explains that "Courts in this district draw a distinction between cases in which a medical expert finds a moderate deficiency in concentration, persistence, or pace from those in which the ALJ independently finds such a limitation."  *Aldrich*, 2013 WL 5372802 at *4; *see also McPhee v. Comm'r of Soc. Sec.*, No. 11-13399, 2013 WL 1277889, at *2 (E.D. Mich. Mar. 27, 2013) ("The case law in this district distinguishes those cases in which a medical expert has found a moderate limitation in CPP, and those where the ALJ found such a limitation. When the ALJ has found such a limitation, the ALJ must incorporate these limitations into the hypothetical questions.").  Plaintiff also cites to case law finding that a limitation of "unskilled work" is not sufficient to account for moderate limitations in CPP.

*See Bielat v. Comm'r of Soc. Sec.*, 267 F. Supp. 2d 698, 702 (E.D. Mich. 2003) ("In general, a reference to "unskilled, sedentary work" is not sufficient to describe deficiencies in concentration."); *see also Edwards v. Barnhart*, 383 F. Supp. 2d 920, 930 (E.D. Mich. 2005) (concluding that a claimant with moderate deficits in concentration, persistence, or pace may be unable "to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job.").

The Commissioner counters that the Sixth Circuit has rejected "the notion that a hypothetical question must contain talismanic language," including a recitation that Plaintiff had moderate limitations in CPP. (DE 13 at 14, quoting *Street v. Comm'r of Soc. Sec.*, 390 F. Supp. 2d 630, 638 (E.D. Mich. 2005) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)). The Commissioner maintains that the Court should instead consider whether substantial evidence supports the ALJ's RFC assessment.

As support, the Commissioner cites to a line of pre-*Aldrich* cases from this District that seemingly refute Plaintiff's assertions, including the published opinion by Rosen, J., *Bohn-Morton v. Commissioner of Social Security*, 389 F. Supp. 2d 804, 805-07 (E.D. Mich. 2005), emphasizing the need for a case-by-case analysis and concluding that limiting a claimant to unskilled work adequately accounted for a moderate deficiency in CPP. *See also Lewicki v. Comm'r of Soc. Sec.*, No. 09-11844, 2010 WL 3905375, at *3 (E.D. Mich. Sept. 30, 2010)(noting that

17

"[d]ecisions in this district reflect the conclusion that a moderate impairment in concentration, persistence, and pace does not necessarily preclude simple, routine, unskilled work."); *McNamara v. Comm'r of Soc. Sec.*, No. CIV.A. 11-10331, 2011 WL 7025855, at *12 (E.D. Mich. Dec. 1, 2011) *report and recommendation adopted*, No. 11-10331, 2012 WL 113541 (E.D. Mich. Jan. 13, 2012) (concluding that the ALJ's hypothetical "need not incorporate a listing of the claimant's medical conditions, so long as the vocational expert's testimony . . . takes into account the claimant's functional limitations."); *Schalk v. Comm'r of Soc. Sec.*, No. 10-CV-13894, 2011 WL 4406824, at *11 (E.D. Mich. Aug. 30, 2011) *report and recommendation adopted*, No. 10-13894, 2011 WL 4406332 (E.D. Mich. Sept. 22, 2011)(concluding that there is "no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of "unskilled work" but excludes a moderate limitation in concentration" and holding that, instead, the "Court must look at the record as a whole and determine if substantial evidence supports the ALJ's RFC."). The Commissioner also asserts that Plaintiff has failed to reference any specific work-related mental limitation which the ALJ failed to consider or failed to include in the RFC. (DE 13 at 18.)

The holding in *Southworth v. Commissioner of Social Security*, No. 12-12243, 2013 WL 3388946 (E.D.Mich. July 8, 2013) is instructive. In that case, the ALJ concluded at step three that the claimant had moderate difficulties in CPP, but

"when formulating a residual functional capacity assessment and corresponding hypothetical for the vocational expert, the ALJ did not include CPP-specific limitations," other than to limit the claimant to unskilled work. *Id.* at *15. After making the RFC finding, the ALJ noted that "the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." *Id.* at *17. The Court found this language persuasive, concluding that it could be construed to mean that "the ALJ believed that his 'moderate' CPP rating was fully accounted for by the limitations in his residual functional capacity assessment. . . ." *Id.* The Court went on to analyze the case under the substantial error framework and concluded that remand was not necessary. The ALJ included verbatim language in the instant case, indicating that the ALJ believed his moderate CPP rating was accounted for by the limitations imposed in his RFC, including limiting Plaintiff to unskilled work. (R. at 17.)

The Undersigned concludes that the ALJ's hypothetical to the VE accurately portrayed Plaintiff's mental limitations and substantial evidence supports the hypothetical and subsequent RFC. Although Plaintiff's brief shows some support for requiring a specifically worded hypothetical to the VE in cases where an ALJ finds a limitation in CPP that is not supported by a medical expert, she points to primarily unpublished decisions from this district, and no binding authority on the

matter.  *See, e.g., Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 430 n. 10

(1996) (each district court judge "sits alone and renders decisions not binding on

others").  I find more persuasive the published cases such as *Bohn Morton*, 398 F.

Supp. 2d at 805-07, which advocate for a case-by-case analysis based on whether

substantial evidence supports the ALJ's hypothetical to the VE and corresponding

RFC.

Here, the ALJ's hypothetical to the VE and corresponding RFC are

supported by substantial evidence.  In his opinion, the ALJ concluded that, per

Plaintiff's self-report, her conditions affected her ability to remember, complete

tasks and concentrate, but that she sometimes finished what she started and could

follow instructions.  (R. at 16.)  Plaintiff testified at the hearing that she was having

no difficulties maintaining attention or concentration, understanding information or

instructions, or making decisions, and that her depression manifested itself in terms

of her mood.  (R. at 54.)  The ALJ's hypothetical to the VE involved a hypothetical

individual who could do light work, which was unskilled.[3]

_____

[3] The Regulations define unskilled work as:

> work which needs little or no judgment to do simple duties that can be
> learned on the job in a short period of time. The job may or may not
> require considerable strength. For example, we consider jobs unskilled
> if the primary work duties are handling, feeding and off bearing . . . or
> machine tending, and a person can usually learn to do the job in 30
> days, and little specific vocational preparation and judgment are
> needed. A person does not gain work skills by doing unskilled jobs.

Plaintiff points to nothing in the record to indicate that the limitation to unskilled work does not account for her limitations in CPP, and there is sufficient case law in this district to support a finding that a limitation to unskilled work reflects a claimant's moderate deficiencies in CPP. *See Bohn-Morton*, 389 F. Supp. 2d at 805-07 (concluding that a limitation to unskilled work adequately reflected Plaintiff's moderate deficiencies in CPP.); *Berkowski v. Comm'r of Soc. Sec.*, 652 F. Supp. 2d 846, 860 (E.D. Mich. 2009) (Declining to remand where the plaintiff failed to reference "*any specific* work-related mental limitation . . . which the ALJ failed to consider, failed to include in the RFC" or requiring a "more restrictive limitation than that set forth in the RFC."). If anything, the ALJ committed a harmless error – and one that gave the benefit of the doubt to Plaintiff at that – by finding such a limitation at step three of the sequential evaluation. *See* S.S.R. 96-8P (S.S.A. July 2, 1996) ("The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.").

Substantial evidence in the record, including Plaintiff's own testimony, supports Plaintiff's ability to perform unskilled work. At the February 20, 2013

---

20 C.F.R. § 404.1568(a).

hearing, Plaintiff testified that she had no trouble with her memory, no

difficulty maintaining attention or concentration, no problems understanding

information or instructions, and no problems making decisions.  (R. at 53-54.)  In

addition, Plaintiff reported on November 1, 2012, that she was "very content" with

Cymbalta, indicating that her depression (and, presumably, any related effect on

CPP) was under control.  (R. at 408.)  The same day, nurse practitioner Heather

Prior assessed Plaintiff as having "no depression, anxiety, or agitation."  (R. at

410.)  Substantial evidence in the record supports the RFC limiting Plaintiff to

unskilled work. The Undersigned therefore recommends that the Court decline to

remand on this basis.

### 2.  Substantial Evidence Supports the ALJ's RFC with Respect to Plaintiff's Migraines

Plaintiff next argues that the ALJ failed to incorporate Plaintiff's impairment

of severe migraines into her RFC.[4]  Plaintiff notes that State Agency physician, Dr.

VanderHaagen opined that, since Plaintiff's previous denial of benefits, there was

new and material evidence of "increasing headaches."  (DE 11 at 17, R. at 126.)

According to Plaintiff, it was therefore an error for the ALJ to assess the same RFC

as ALJ Eiler, with only the change of limiting Plaintiff to unskilled work as

---

[4] The entirety of this argument takes up one page at the end of her brief, is not
identified as a separate issue for consideration, and is difficult to follow.
Nevertheless, I will endeavor to analyze this argument to the extent it is
discernable.

addressed above.  The Commissioner argues that the ALJ's RFC assessment was appropriate because there is no requirement that every impairment deemed severe at step two must be included in the RFC and that the ALJ found Plaintiff's testimony about her headaches to be less than credible.

Plaintiff's argument is unavailing.   First, an ALJ is not required to incorporate all impairments deemed severe at step two into his or her hypothetical to the VE or the corresponding RFC.  *Griffeth v Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007).  A step two finding of severity is merely a "*de minimis* hurdle*,*" which "enable[s] the Commissioner to screen out 'totally groundless claims.'"  *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988); *Griffeth*, 217 F. App'x at 428 (quoting *Farris v. Sec'y of Health & Hum. Servs.*, 773 F.2d 85, 89 (6th Cir. 1985)).   "A claimant's severe impairment may or may not affect his [or her] functional capacity to do work."  *Yang v. Comm'r of Soc. Sec.*, No. 00-10446-BC, 2014 WL 1765480, at *5 (E.D. Mich. July 14, 2004).  Even after determining that an impairment is severe at step two, the ALJ retains an obligation to "assess credibility and determine the facts" as to the claimant's physical and mental limitations.  *Redfield v. Comm'r of Soc. Sec.*, 366 F.Supp. 2d 489, 497 (E.D. Mich. 2005).

Here, the ALJ concluded at step two that Plaintiff's migraines were a severe impairment.  (R. at 15.)  He went on to summarize Plaintiff's testimony that she

experienced debilitating headaches about six times per month.  (R. at 18.)  The ALJ then concluded that Plaintiff's testimony was not entirely credible for a number of reasons.  (Id.)  First, he pointed out that Plaintiff received unemployment benefits from her alleged onset date until the end of 2012, which required her to certify that she was available for and seeking full-time work, but testified at the hearing that she was unable to perform work due to her debilitating headaches.  (R. at 19.)  I entirely agree with the ALJ's finding that "the claimant's willingness to tell one government agency that she is able to work full-time to collect benefits while simultaneously alleging to another government agency that she is unable to work full-time in an attempt to collect benefits raises serious doubts about her overall veracity."  (R. at 18-19.)  *See Workman v. Comm'r of Soc.Sec.*, 105 F. App'x 794, 801-02 (6th Cir. 2004) (concluding that the ALJ appropriately discounted a claimant's credibility where the claimant simultaneously filed for unemployment benefits, noting that there was "no reasonable explanation for how a person can claim disability benefits under the guise of being unable to work, and yet file an application for unemployment benefits claiming that he [or she] is ready and willing to work." (internal quotations omitted)).  Plaintiff appears to be "blowing hot and cold as the occasion demands [or] having one's cake and eating it too" in her attempts to collect

24

benefits from two government agencies for conflicting reasons. *See Reynolds v. CIR*, 862 F.2d 469, 472 (6th Cir. 1988) (internal citations omitted)).

Second, the ALJ noted the lack of consistency between her allegations of severity and objective medical evidence. In support of this assertion, the ALJ pointed to a January 3, 2013 record of a normal neurological examination performed by Khalil Nasrallah, M.D., at Bay Regional Neurosciences. (R. at 423.) At the same visit, Plaintiff reported that she was "feeling better lately," and that her headaches were under better control following a course of physical therapy. (Id.) The ALJ also noted that Plaintiff "engages in significant activities on a regular basis, which further undermines her allegations of disability," even when she was experiencing headaches. (R. at 19.) For example, she takes her two sons to school, picks them up, cooks for them, does their laundry, washes dishes, cleans the house, drives, goes shopping, watches television, reads, plays with her children, and spends time with others twice a week.[5]  (R. at 245-248.)

---

[5] She also reported that her diabetes was better controlled, although her leg pain increased *after standing on her feet or working all day*, and that she did not take her insulin as directed, nor did she complete her required lab work. (R. at 401 and 414.)  *See Sias v. Sec'y of Health & Hum. Servs.*, 861 F. 2d 475, 480 (6th Cir. 1988) (concluding that the ALJ properly discounted the claimant's credibility where he failed to follow prescribed treatment); S.S.R. 96-7p, 1996 WL 374186, at *8 (noting that "the individual's statements may be less credible if . . . the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure.").  In addition, Plaintiff denied having any depression and reported that her pain symptoms have improved. (R. at 406 and 408.)

Plaintiff relies on *Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000) for the proposition that the ALJ "cannot summarily reject medical evidence without explanation and substitute his [or her] own judgment for that of a treating or even a consulting physician." (DE 11 at 18.) Plaintiff asserts that the ALJ failed to explain the inconsistency between Dr. VanderHaagen's opinion that there was "new and material evidence of migraine headaches" and the ALJ's ultimate RFC, which was largely similar to the one opined by ALJ Eiler. (R. at 126.) However, the ALJ did not summarily reject medical evidence and substitute his own judgment for a treating or consulting physician. As noted above, the ALJ concluded that Plaintiff's testimony as to her migraines was not entirely credible. Furthermore, the ALJ gave "great weight" to Dr. VanderHaagen's opinion, which noted that Plaintiff's allegations that her headaches were increasing in frequency were not supported by the medical evidence of record. (R. at 126.) He found that medical evidence supported only a limited range of lighter work with postural and environmental limitations (R. at 124-127), and no other medical source imposed greater limitations. Plaintiff points to nothing to the contrary here, and it was appropriate for the ALJ to rely on these findings. *See Johnson v. Comm'r of Soc. Sec.*, No. 11-14655, 2013 WL 812081, at *6 (E.D. Mich. Feb. 12, 2013) (concluding that, where "the record [did] not include an opinion from a treating source, or an examining source . . . identifying limitations greater than those found

26

by the state agency consultant," and where Plaintiff did not point to any evidence to contradict the findings of the stage agency consultant, the ALJ was entitled to rely on the findings of the state agency consultant). Accordingly, Plaintiff has not met her burden to show that the ALJ improperly failed to incorporate evidence of her migraine headaches into her RFC.

### G. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment, **GRANT** Defendant's motion for summary judgment, and **AFFIRM** the Commissioner of Social Security's decision.

### III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health &*

27

*Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: June 16, 2015             s/Anthony P. Patti
                                 Anthony P. Patti
                                 UNITED STATES MAGISTRATE JUDGE

### Certificate of Service

I certify that a copy of this document was sent to parties of record on Tuesday, June 16, 2015, electronically and/or by U.S. Mail.

                                 s/Michael L. Williams
                                 Case Manager to the
                                 Honorable Anthony P. Patti

28